FIRST ITALIAN BUILDING AND LOAN ASSOCIATION

*v.*

ROSINA M. DINISCIA et al.

[Decided November 26th, 1910.]

1. A building and loan association agreed to lend $6,000 to one of its stockholders and took from the stockholder and her husband, as security, their bond conditioned to pay one dollar monthly on each of the thirty shares of stock owned by her, and to pay interest monthly, until the shares should attain the par value of $200 each; and also took a mortgage, the purpose of which, as expressed in the condition, was to secure the payment of the sum of money mentioned in the condition of the bond "at the time and times and in the manner mentioned in the said condition."—*Held*, in a suit to foreclose such mortgage, that the defendant could not set up a partial non-performance by the association of its agreement to lend the full sum of $6,000 as a bar to the recovery of the money actually advanced, and that if the association could recover at all, it would necessarily be on the footing of its contract which was not to pay $6,000 at the time the mortgage was executed, but, in the language of the association's minutes, "gradually, according to the progress of the work."

2. It does not follow that because of a default of the association in making particular payments the defendant can rescind *in toto*, and refuse to repay anything.

3. The defence that the association having refused to pay over a part of what it had agreed to lend, should have applied the money retained to the payment of the unpaid dues and interest, is not available to the mortgagors, inasmuch as this duty, if it existed, must have sprung out of a custom of the association known to its customers or out of an express contract, and the defendants have not proved either.

4. The claim that the association actually applied the money retained to the payment of dues and interest, is not sustained by proof that the association gave the stockholder a pass-book in which the secretary entered certain credits; it appearing that, by the by-laws, (1) the treasurer is the person authorized to receipt for dues and not the secretary, and (2) that the monthly payments were to be made at monthly meetings, and the entries actually made were not made at such meetings, and that as the contract was to advance money for the purpose of completing the building, it was incumbent on the defendants to show that the same was changed by the mutual agreement of the parties.

*Mr. Cecil H. McMahon,* for the complainant.

*Mr. William A. Lord,* for the defendant.

STEVENS, V. C.

This is a suit to foreclose a building and loan mortgage. The owner of the property is Rosina DiNiscia. Her husband is a builder, and, as is admitted, acted as her agent in procuring the loan. He was engaged in erecting a building upon the property, and applied to the defendant association for money to be used in its construction. The association agreed to lend him $6,000. His wife took thirty shares of stock of the association, and he and his wife on April 16th, 1907, executed a bond and mortgage to secure the sum to be borrowed. The mortgage stipulated as follows:

"Now this indenture witnesseth that the said parties of the first part for the better securing the payment of the said sum of money mentioned in the condition of the said bond or obligation with interest thereon * * * grant the property in question * * * provided always and these presents are upon this express condition that if the parties of the first part shall well and truly pay unto the party of the second part its successors or assigns, the said sum of money mentioned in the condition of the said bond or obligation and the interest thereon at the time and times and in the manner mentioned in the said condition according to the true intent and meaning thereof, that then these presents and the estate hereby granted shall cease, determine and be void."

The condition of the bond reads as follows:

"The condition of the above obligation is such that if the above bounden Rosina M. DiNiscia and Angelo M. DiNiscia * * * shall well and truly pay or cause to be paid unto the above-named association its successors or assigns the just and full sum of $6,000 in manner following, viz., by the payment of one dollar on each of the thirty shares of the capital stock of said association owned by the said Rosina M. DiNiscia and standing in her name on the books of the association and assigned to it as collateral security for the payment hereof and on which this loan is based on the third Tuesday of each and every month hereafter or such other time as may hereafter be appointed for that purpose until the said shares shall attain the par value of two hundred dollars each, together with interest on said sum and to be computed at the rate of six per cent.

per annum and payable monthly at the same time and in the same manner as the stock payments aforesaid and also all fines　*　*　*　then the above obligation to be void," &c.

It will thus be seen that the obligation is not to repay $6,000 with interest at a specified time, but to pay one dollar monthly on each share of stock and to pay interest, monthly, until the shares attain the par value of $200 per share. It is conceded that the mortgagors did not do this. They paid neither dues nor interest. The bond provides that if the dues and interest remain in arrears for three months, the principal or the unpaid residue thereof shall become due.

The defence appears to be threefold—*first,* that complainant is not in a position to foreclose because it did not itself perform its contract; *second,* that having refused to pay over a part of the $6,000, which it had agreed to lend, it should have applied the money retained to the payment of the dues and interest; *third,* that it actually so applied them.

*First.* The association, in April, agreed, not to pay over $6,-000 at the time the mortgage was executed, but to pay that sum, in the language of the minutes of the association, "gradually, according to the progress of the work." In July following, at a meeting of the board of directors, it was agreed to lend $1,000 more. DiNiscia admits that he was present at this July meeting. The minutes of it contain the following paragraph:

"The president has declared to the board that in consequence of the misunderstanding between Mrs. Rosina DiNiscia, James M. Trimble and the board of directors regarding the use of the money loaned to Rosina DiNiscia, part of it has been used to pay debts existing on the property mortgaged to the association and that in consequence the rest of the money loaned is not sufficient to complete the building for the purpose loaned and says that the money needed is about $1,000, and that a way should be found to solve this advertence."

The minutes then go on to state that Mrs. DiNiscia should find four competent persons, a mason, a carpenter, a plumber and a painter to *finish* the house, "the total estimated amounts not to go above the amount left from the first loan, plus a $1,000 additional loan." The persons selected were not to demand any

money for work or material furnished until the work was completed and approved. The minute ends as follows:

"But said contractors may by guaranteeing to Mrs. Rosina DiNiscia and the association, draw fifty per cent. of the value of the work done, leaving the balance of the payment when the property is *conveyed* (completely?) finished."

A second mortgage was executed to secure the additional $1,-000, but no money was advanced upon it. The association paid in all, between April 23d and December 20th, 1907, about $4,-900; perhaps a little more. It refused to make further payments because, as it claimed, DiNiscia could not complete the work for the sum agreed to be lent and could not obtain money from other sources sufficient to enable him to finish the building in such a way that it would be free from liens having priority over the mortgages of the association.

The question first presented is whether the association violated its agreement. Unfortunately, the evidence of the two witnesses who could have testified most understandingly on the subject is lacking. Mr. Trimble, the counsel of the association, is dead. Its secretary, a lawyer of Italian birth, is at present mentally disabled. The evidence is vague, but the weight of it seems to be against defendant's contention, that the building could have been finished and left free from lien, for the sum which the association agreed to lend. No reason is apparent why the association should not have performed its part of the contract if DiNiscia had performed his.

But on the assumption that Mrs. DiNiscia is right in asserting that the company violated its agreement to lend her the money, she does not show that she has a defence to the foreclosure. The contract, as expressed in the minutes of April, 1907, was to pay gradually as the work progressed. It does not follow that because of a default by the association in making particular payments the defendants can rescind *in toto* and refuse to repay anything. The defendant might indeed recover damages for the breach of a contract to lend money (*2 Sedgw. Dam. (8th ed.)* § *622*), but the recovery would be given on the normal principle of compensation, and the association would still be entitled to have the money actu-

ally lent repaid to it in accordance with the terms and conditions of its bond and mortgage. *Blackburn* v. *Reilly, 47 N. J. Law (18 Vr.) 290*. Whether under the rule laid down in *Alpaugh* v. *Wood, 45 N. J. Eq. (18 Stew.) 153,* this court could assess the damages, I need not consider, for no special damage is, up to this time, shown. It seems to me very plain that the defendant cannot set up a partial non-performance as a bar to the recovery of the money actually advanced, and if complainant can recover at all, it must necessarily be on the footing of its contract.

The second contention is that it was complainant's duty to have applied the money retained to the payment of dues and interest. This duty, if it existed, must have sprung out of a custom on the part of the company known to its customers or out of an express contract. The defendants have not proved either; all they proved was that the first month's dues and interest were customarily credited.

The third contention is that the association has actually applied the money to the payment of dues and interest. The proof on this subject on the part of defendants was that the association gave to Mrs. DiNiscia a pass-book in which the secretary credited her with $60 per month up to and including October, 1907. The evidence of the *existence* of the book, which is said to have been lost, is more persuasive than the evidence of its contents. Unfortunately, the secretary is, as I have said, incapacitated from testifying; but assuming that the entries were such as Mr. DiNiscia says they were, they were entered by the secretary without any payment of money. Such entries therefore, to bind the association, must have been expressly authorized. The defendants have failed to show that they were. In the first place, they do not appear to have been made by the proper officer. Under the by-laws, the *treasurer* is the person to receipt for dues. It is not pretended that *he* made the entries in question. In the second place, the monthly payments, according to the by-laws, were to be made at the monthly meetings. It is not pretended that the entries were made or the book written up at these meetings. Thirdly, as the contract appearing from the minutes of July, 1907, was to advance money for the purpose of completing the building, it was incumbent on the defendants to show that such contract was

changed by the mutual agreement of the respective parties. The secretary certainly had no implied authority to vary the terms of the contract, and no express authority authorizing him to do so is shown.

It would seem clear therefore that as no ·actual payment of dues or interest was made for more than three months prior to the commencement of the suit the action is not premature.